**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

Steve Sawczyn, individually and on behalf
of all others similarly situated,

                              Plaintiff,

v.

BMO Harris Bank National Association,

                              Defendant.

Civ. No. 13-2309 (RHK/SER)
**MEMORANDUM OPINION
AND ORDER**

---

Stephanie K. Goldin, Carlos R. Diaz, Jamisen A. Etzel, Carlson Lynch Ltd., Pittsburgh, Pennsylvania, Thomas J. Lyons, Lyons Law Firm, P.A., Vadnais Heights, Minnesota, for Plaintiff.

Lucia Nale, Andrew S. Rosenman, Richard E. Nowak, Mayer Brown LLP, Chicago, Illinois, John L. Krenn, Kelly W. Hoversten, Gray Plant Mooty Mooty & Bennett, P.A., Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

In this action, Plaintiff Steve Sawczyn alleges the automated teller machines ("ATMs") of Defendant BMO Harris Bank National Association ("BMO") were not accessible to him as a legally blind individual, in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") and its implementing regulations. BMO now moves to dismiss for lack of subject-matter jurisdiction, asserting Sawczyn lacks standing and the action is moot. For the reasons set forth below, the Court will deny BMO's Motion.

**BACKGROUND**

The ADA protects the rights of individuals with disabilities with respect to places of public accommodation, commercial facilities, transportation, and other places or services. Specifically, Title III of the ADA prohibits public accommodations from discriminating against persons with disabilities and requires them to be readily accessible to and independently usable by persons with disabilities. 42 U.S.C. §§ 12181–89. The Department of Justice has promulgated rules implementing Title III, including the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards set forth various standards for banks, as places of public accommodation under Title III, to follow in order to make ATMs accessible to persons with disabilities.

At issue here are several of the 2010 Standards specifically aimed at making ATMs accessible to and independently usable by visually impaired individuals. For example, the guidelines require ATMs to be speech enabled and to have tactilely discernible input controls, function keys with specific tactile symbols, Braille instructions for initiating speech mode, and a headphone jack to allow for privacy while using speech mode. The deadline for conforming to the 2010 Standards was March 15, 2012.

In this action, Sawczyn alleges BMO's ATMS violated these standards. He alleges he visited two of BMO's ATMs, located at 522 Snelling Avenue, Saint Paul, Minnesota, and 5050 France Avenue, Edina, Minnesota, sometime after March 15, 2012. (Am. Compl. ¶ 9.) These ATMs are located approximately eleven and three miles from his home, respectively, and are within the "geographic zone that Plaintiff typically travels as part of his regular activities." (Id. ¶ 10.) When he visited the ATMs with his bank

card and headphones intending to use them, he discovered neither had a voice-guidance feature and the France Avenue ATM's function keys did not have the proper tactile symbols (both of which are required by the 2010 Standards) and he could not independently operate the ATMs as a result.  (Id. ¶¶ 45–46, 49–50.)  He alleges that, as of the date of his Amended Complaint, he remained unable use these ATMs and that further investigation on his behalf revealed more than fifteen of BMO's ATMs were noncompliant.  (Id. ¶ 51.)  Sawczyn alleges he will continue to attempt to use BMO's ATMs in the future to test their compliance in an effort "to identify convenient accessible ATM options" near him and "to increase ATM accessibility for the blind community, generally."  (Id. ¶ 52.)

In August 2013, Sawczyn commenced the instant action (and eleven similar actions in this District against other financial institutions) seeking injunctive relief under the ADA for BMO's failure to accommodate him and other legally blind persons who have tried to use its ATMs.  BMO now moves to dismiss, asserting Sawczyn lacks standing and the action is moot because its ATMs are now in compliance with the 2010 Standards.  The Motion has been fully briefed and is ripe for disposition.

## STANDARD OF DECISION

BMO moves to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  On a Rule 12(b)(1) motion—unlike a Rule 12(b)(6) motion—the Court may consider matters outside the pleadings without converting the motion into a summary-judgment proceeding.  Osborn v. United States, 918 F.2d 724, 729–30 & n.6 (8th Cir. 1990).  In this Motion, the parties have submitted affidavits

addressing BMO's ADA compliance, among other matters, which the Court will consider. But as the parties have yet to undertake discovery, the Court will take Sawczyn's allegations as true to the extent they remain uncontradicted by the very limited record. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.") (quotation omitted). If the Court determines at any time it lacks jurisdiction—whether upon motion or on its own—it must dismiss the action. Fed. R. Civ. P. 12(h)(3); Harris v. P.A.M. Transp., Inc., 339 F.3d 635, 637 n.4 (8th Cir. 2003). Accordingly, the parties may challenge jurisdiction more than once throughout the course of litigation.

## ANALYSIS

**I.     Standing**

BMO challenges whether Sawczyn has standing to pursue his claim, that is, whether he "is entitled to have the court decide the merits of the dispute." Warth v. Seldin, 422 U.S. 490, 498 (1975). To meet the constitutional minimum of standing, a plaintiff must establish "that he or she has suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; that there is 'a causal connection between the injury and the conduct complained of'; and that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision.'"[1]  Constitution Party v. Nelson, 639 F.3d 417, 420 (8th Cir. 2011) (quoting Lujan, 504 U.S. at 560–61).

When, as here, a plaintiff seeks injunctive relief, he must demonstrate a "real and immediate threat of future injury by the defendant." City of Los Angeles v. Lyons, 461 U.S. 95, 101–02 (1983).  In the context of the ADA, a plaintiff may demonstrate an "injury in fact" by establishing his intent to return to the noncompliant public accommodation.[2]  Sawczyn alleges (1) he has visited the noncompliant ATMs in the past, (2) the ATMs are located approximately three and eleven miles from his home (Am. Compl. ¶ 10), and (3) he "will continue to attempt to use the Subject ATMs because he wants to identify convenient accessible ATM options within the zone that he typically travels as part of his regular activities, and [because] he wants to increase ATM accessibility for the blind community, generally" (id. ¶ 52).  Of these allegations, BMO challenges only Sawczyn's intent to use the ATMs in the future.

While there is no definitive test in the Eighth Circuit for determining whether a plaintiff intends to return to a noncompliant accommodation, see Miller v. Ataractic Inv. Co., Civ. No. 11-3509, 2012 WL 2862883, at *3 (W.D. Mo. July 11, 2012), courts often consider factors such as (1) the plaintiff's proximity to the accommodation; (2) the

---

[1] Standing is determined by the facts of the case as they existed at the time the lawsuit was filed; accordingly, the Court's discussion of standing does not implicate BMO's allegations that its ATMs are now ADA-compliant.  See Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000).

[2] Because the Court concludes Sawczyn has alleged sufficient facts supporting his intent to return to a BMO ATM, it need not consider his alternative argument that he experiences an ongoing injury as a result of the deterrent effect of BMO's noncompliance.  See Chapman v. Pier 1 Imports (U.S.), Inc., 631 F.3d 939, 944 (9th Cir. 2011) (en banc) (recognizing deterrent effect as an injury-in-fact for standing purposes).

frequency of plaintiff's nearby travel; (3) the plaintiff's past patronage; and (4) the definiteness of plaintiff's plans to return. E.g., Steelman v. Rib Crib No. 18, Civ. Nos. 11-3433, et al., 2012 WL 4026686, at *2 (W.D. Mo. Sept. 12, 2012). Accordingly, the Court will use these factors to guide its analysis.

Sawczyn's proximity to the BMO ATMs and his frequency of nearby travel both weigh in favor of standing. He alleges the ATMs are located only three and eleven miles from his home and BMO's investigation confirms this estimate. (See Nowak Decl. ¶ 4 (averring the ATMs are located 3.8 and 11.5 miles from his home address).) He also alleges they lie within the zone he "typically travels as part of his regular activities." (Id. ¶ 10.) More specifically, he frequents Edina (where the France Avenue ATM is located) to visit restaurants and shop and he travels to Saint Paul (where the Snelling Avenue ATM is located) to visit friends and attend outreach events. (Id. ¶ 11.)

Contrary to BMO's argument, Sawczyn need not establish BMO's ATM is the *nearest* ATM to his home nor the *most* convenient. Rather, he need only allege that the ATMs he visited are *near enough* and *convenient enough* that he might reasonably be expected to visit them again. Therefore the statistics BMO painstakingly compiled regarding how many other ATMs are as close or closer to Sawczyn's home (see Def.'s Mem. at 11–13) are ultimately beside the point. Sawczyn lives less than twelve miles from the ATMs and frequents the surrounding areas, both of which lend credence to his allegation that he will return to use them in the future. Cf., e.g., Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1340 (11th Cir. 2013) (finding standing where plaintiff lived 30 miles from accommodation and frequently visited his attorney's office

nearby); Daniels v. Arcade, L.P., 477 F. App'x 125, 129–30 (4th Cir. 2012) (finding standing where plaintiff alleged he "lives near the Market, had visited the Market before the filing of the amended complaint," and "'intends to continue to visit the [Market] in the future for his shopping needs'").

BMO contends the last two factors—his past patronage and the definiteness of his plans to return—undercut Sawczyn's standing, but the Court disagrees. These two factors are largely inapplicable to Sawczyn's case and therefore carry little to no weight in the Court's analysis. See Daniels, 477 F. App'x at 129–30 (declining to require a "more specific" allegation of when the plaintiff intended to return to the noncompliant accommodation and concluding plaintiff's litigation history was irrelevant).

Sawczyn's past patronage is admittedly thin. He is not a BMO customer and he alleges that he visited each ATM only once. As he has not returned to the ATMs since his first visit, BMO contends he never will. But requiring a history of patronage is incongruous in an ADA case like this one. While Sawczyn certainly *could* have returned to BMO's ATMs—knowing he was unable to use them—in order to manufacture standing, it would be poor policy to require him to. Plaintiffs are not required to make futile attempts at using noncompliant public accommodations in order to sue under the ADA, 42 U.S.C. § 12188(a)(1), nor should they be required to do so for standing purposes, see Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1138 (9th Cir. 2002); Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000). Accordingly, the Court will not hold Sawczyn's failure to revisit the noncompliant ATMs against him in its analysis.

The final factor is the definitiveness of Sawczyn's plans to return. Insofar as courts have interpreted this to require a plaintiff to plead particulars of when he will return, the Court finds this factor equally inappropriate to Sawczyn's case. In Lujan, the Supreme Court announced that general "some day" intentions to return were insufficient allegations of future injury for the purpose of standing. 504 U.S. at 564. It explained: "such 'some day' intentions [to return]—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." Id. But in Lujan, the plaintiffs needed to travel halfway across the globe on a mission to observe endangered species in order to suffer the "imminent" future injury they alleged. Id. at 563–64. A trip of that sort requires scheduling, coordination, and preparation—in other words, it requires concrete and advanced plans. Visiting a nearby ATM, on the other hand, does not. Given the spontaneous nature of ATM visits, Sawczyn need not allege when *specifically* he will return to use BMO's ATMs in order for the Court to consider his professed intent to return credible and definite. Cf. Parr v. L&L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1079 (D. Haw. 2000) (where noncompliant public accommodation is fast-food restaurant, "specification as to a date and time" of return visit is "impossible" due to the "spur of the moment" nature of fast-food visits). Therefore, this final factor weighs little in the Court's analysis.

Overall, based on the pleadings and limited record before it, the Court concludes Sawczyn's alleged past use of BMO's local ATMs and his intent to use them again are

sufficient to create a concrete, imminent threat of future harm and Sawczyn therefore has standing to pursue his claim.

**II.     Mootness**

A plaintiff must have standing throughout the life of a case, not just at the beginning, in order for it to constitute a justiciable "case or controversy" under Article III.  See U.S. Parole Comm'n v. Garaghty, 445 U.S. 388, 397 (1980).  Otherwise, the case becomes moot.  Stated differently, "mootness [is] the doctrine of standing in a time frame.  The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."  Id. (quotation and citation omitted).  BMO asserts this case is moot because its alleged ADA violations have been rectified, leaving Sawczyn with nothing to gain from his requested injunctive relief.

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.  If it did, the courts would be compelled to leave the defendant free to return to his old ways." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (quotations, citation, and alterations omitted).  The defendant carries a "heavy burden" of demonstrating not only that it has voluntarily ceased the offending conduct but also that it is "absolutely clear" the offending conduct "could not reasonably be expected to recur." Id.  Thus, BMO must establish that its ATMs are ADA-compliant *and* that they will remain compliant.  Based on the record before it, the Court cannot conclude as a matter of law that BMO has satisfied this "heavy burden."

First, despite BMO's assertion, the evidence does not conclusively show that BMO's ATMs are currently ADA compliant. BMO relies on the declaration of its Vice President, Brenda Pino, to establish its compliance. Pino avers that BMO investigated the France and Snelling Avenue ATMs on September 4, 2103, after Sawczyn commenced the instant suit and found they lacked functioning headphone jacks to enable users to access the voice-guidance feature. (Pino Aff. ¶ 5.) It then surveyed its other ATMs in the Twin Cities area for voice guidance or software issues and found two more ATMs without functioning headphone jacks. (Id. ¶ 8.) According to Pino, BMO replaced each of these jacks. (Id. ¶ 7–8.)

But apart from these nonfunctioning jacks, Pino does not acknowledge any other ADA violations. She avers that the software on the France and Snelling Avenue ATMs was working properly and that they had "proper decals and Braille lettering." (Id. ¶ 6.) In contrast, Sawczyn alleges that the France Avenue ATM lacked proper tactile symbols. As Pino does not concede this alleged violation, she does not describe any measures taken to correct it. Nor does she address whether BMO's other ATMs have proper tactile symbols. Thus, the Court is left unsure whether its ATMs are fully compliant or just have functioning software and voice-guidance features.

While the *implication* of Pino's declaration is that the ATMs are compliant (at least according to BMO's counsel), she never states this. Instead, she states she has "not been made aware of any new or recurring problems with any of the BMO [] ATMs" in the Twin Cities since BMO corrected the headphone jacks. (Id. ¶ 9.) But this offers little

consolation when she acknowledges that she was also unaware of any accessibility problems with BMO's ATMs before Sawczyn filed this suit. (Id.)

Even if the Court were to accept BMO's assertion that its ATMs are now ADA-compliant, it has not persuaded the Court that they will remain compliant. The Court recognizes that BMO took steps to comply with the 2010 Standards by the March 15, 2012 deadline (see Pino Aff. ¶ 3). That said, it is unclear from the record if these efforts were successful and whether the ATMs Sawczyn visited were *ever* compliant (until this litigation began). If not, that is relevant for two reasons. First, it tends to show that BMO's compliance was not entirely voluntary, but rather prompted by the threat of costly litigation. See United States v. Or. State Med. Soc'y, 343 U.S. 326, 333 (1952) ("It is the duty of the courts to be aware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit."); Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1184 (11th Cir. 2007). Second, if BMO *was* trying in earnest to comply with the ADA and yet these alleged violations went unnoticed and unrepaired for eighteen months, then BMO's procedures were utterly ineffective. This seriously undermines BMO's contention that it will properly maintain the ATMs in the future.

This contention is further belied by the absence of any written corporate policy aimed at ensuring compliance. As close as BMO gets to such a policy or procedure is Pino's statement that she "routinely" tests its ATMs. (Pino Aff. ¶ 2.) But she provides no further details regarding these tests, such as which ATMs she tests and how often,

what she tests for, and whether she tests ATMs at random, according to a policy, or only in response to customer complaints.  (Id.)

Finally, although BMO has acknowledged some of the alleged ADA violations, it has not acknowledged all of them.  The Court cannot conclude as a matter of law that BMO has voluntarily complied with the ADA when it has not conceded one of the alleged violations occurred, much less provided evidence that the violation was remedied. Sheely, 505 F.3d at 1184 (defendant's admission of liability relevant—if not required—for mootness); see also United States v. Bob Lawrence Realty, Inc., 474 F.2d 115, 127 (5th Cir. 1973) ("[I]n the face of appellant's own inability to recognize his transgressions of the Act, we decline to assume that he will not violate the [Civil Rights] Act in the future.").

In sum, the Court cannot conclude as a matter of law that it is "absolutely clear" another protracted lapse in compliance "could not reasonably be expected to recur." Friends, 528 U.S. at 189.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that BMO's Motion to Dismiss (Doc. No. 42) is **DENIED**.

Dated:  March 19, 2014                                  s/Richard H. Kyle
                                                        RICHARD H. KYLE
                                                        United States District Judge